# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20392

United States Court of Appeals
Fif h Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

JOHN SMITHER; PATRICIA SMITHER,

      Plaintiffs - Appellants

v.

DITECH FINANCIAL, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-38

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:*

After Plaintiffs–Appellants John and Patricia Smither defaulted on their home equity loan, Defendant–Appellee Ditech Financial, L.L.C., applied for an order allowing it to proceed with foreclosure. The Smithers then filed the present suit, seeking a declaration that Ditech's right to foreclose was time-barred by Texas Civil Practice and Remedies Code § 13.605's four-year statute of limitations for foreclosure actions and asserting that Ditech had violated the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20392

Texas Debt Collection Act and Fair Debt Collection Practices Act.  The district court granted Ditech's motion to dismiss and denied the Smithers' motion for reconsideration.  We AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2006, John and Patricia Smither executed a home equity loan (the Loan), which was secured by their homestead in Houston, Texas (the Property).[1]  The Smithers divorced in 2007, and John transferred his interest in the Property to Patricia, retaining a lien on the Property pursuant to the divorce decree.  In July 2009, Bank of America, the then mortgagee, sent notices of acceleration to the Smithers (the 2009 Acceleration) and, in August 2009, applied in state district court for an order allowing it to proceed with foreclosure (the 2009 Foreclosure Suit).  Patricia filed a Chapter 13 bankruptcy petition in September 2009, and Bank of America dismissed the 2009 Foreclosure Suit without prejudice in December 2009.  Patricia's bankruptcy petition was dismissed in January 2010, but she refiled for bankruptcy shortly thereafter.  On July 20, 2010, the bankruptcy court confirmed Patricia's bankruptcy plan, which provided for Patricia's surrender of the Property to Ditech Financial, L.L.C., the then-and-current mortgagee.  However, in June 2011, Patricia's bankruptcy plan was amended to allow her to resume payment on the Loan.  Patricia did not, however, resume payment, and on November 6, 2015, following the discharge of Patricia's other debts in her bankruptcy case, Ditech filed a new application for foreclosure in state district court (the 2015 Foreclosure Suit).

On November 20, 2015, the Smithers filed the instant suit against Ditech in state district court.  The Smithers requested a declaration that Ditech's "lien

---

[1] This factual background is drawn from the allegations in the Smithers' pleadings, which the court must accept as true in considering whether dismissal was appropriate.  *See Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 391 (5th Cir. 2014).

on the Property [wa]s no longer enforceable." According to the Smithers, Texas Civil Practice and Remedies Code § 13.605 required Ditech to bring suit foreclosing on its lien on the Property within four years of the 2009 Acceleration, when Ditech's cause of action allegedly accrued.[2]  Because the 2015 Foreclosure Suit was brought more than four years later, the Smithers asserted that it was "barred by the statute of limitations."  The Smithers also asserted that Ditech had violated the Texas Debt Collection Act (TDCA) by "report[ing] the past-due amounts on the Loan on the [Smithers'] credit reports even though the debt is no longer enforceable."

On December 28, 2015, Ditech filed a general denial in state district court.  After timely removing the lawsuit to federal district court on the basis of diversity jurisdiction, Ditech moved for dismissal under Federal Rule of Civil Procedure 12(b)(6).  In pertinent part, Ditech argued that Bank of America's voluntary dismissal of the 2009 Foreclosure Suit constituted abandonment of the 2009 Acceleration, thereby restoring the Loan's maturity date to its original condition and rendering the 2015 Foreclosure Suit timely.  Ditech also argued that the Smithers' TDCA claim failed because, *inter alia*, it was based on the Smithers' mistaken belief that their debt was no longer enforceable.

On February 3, 2016, the Smithers filed a response to Ditech's motion, as well as an amended complaint.[3]  The amended complaint contained

---

[2] § 16.035 states, in part, that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.035(a).

[3] The parties dispute whether the Smithers' amended complaint was timely filed under Federal Rule of Civil Procedure 15(a)(1)(B), such that it, rather than the Smithers' original petition, should be considered in analyzing whether the Smithers stated claims upon which relief could be granted.  Rule 15(a)(1)(B) allows a party to amend its pleadings "once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  The Smithers assert that their amended complaint was timely because it was filed within 21 days of Ditech's motion to dismiss.  Ditech counters that the amended complaint was untimely because it was filed more than 21 days after Ditech filed its general denial in state court.  We need not, and

additional factual allegations and added two new claims against Ditech.  First, it added an alternative claim under the TDCA, alleging that, even if Bank of America abandoned the 2009 Acceleration, Ditech "misrepresented the character, extent, or amount of a consumer debt in violation of Tex. Fin. Code § 392.304(a)(8)" by not reflecting that abandonment "on information provided to credit reporting agencies."  Second, it added a claim that Ditech violated the Fair Debt Collection Practices Act (FDCPA) by "continuing to report the past-due amounts on the Loan and the foreclosure of the Loan on the [Smithers'] credit reports even though either the debt is no longer enforceable or the foreclosure was abandoned."

On April 15, 2016, the district court granted Ditech's motion to dismiss and dismissed the entire case with prejudice.  The Smithers timely moved for reconsideration under Federal Rule of Civil Procedure 59(e),[4] arguing that the district court erred in dismissing their entire case with prejudice because their amended complaint asserted additional facts and additional causes of actions that were not addressed in Ditech's motion to dismiss.  In response, Ditech argued that the Smithers' amended complaint, like their original petition, failed to state a claim upon which relief could be granted.  The district court denied the Smithers' Rule 59(e) motion on May 27, and the Smithers timely appealed, challenging the "final order (judgment) of the District Court for Southern District of Texas, Houston Division, entered in this action on . . . May 27, 2016, at docket number 18."

---

do not, resolve this dispute because, as discussed *infra*, the Smithers' amended complaint and original petition both fail to state a claim upon which relief can be granted.

[4] Although styled as a motion for new trial pursuant to Federal Rule of Civil Procedure 59(a), we construe the Smithers' motion as a motion to alter or amend the judgment under Rule 59(e) because there was no trial.  *See Calhoun v. FBI*, 546 F. App'x 487, 489 n.2 (5th Cir. 2013) (per curiam); *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785, n.1 (5th Cir. 1996). Indeed, on appeal, both parties analyze the Smithers' motion as a Rule 59(e) motion to reconsider the district court's dismissal order.

## II. JURISDICTION

Before proceeding to the merits, we must address Ditech's apparent argument that we lack jurisdiction to consider the Smithers' challenge to the underlying dismissal because they did not explicitly identify the district court's dismissal order in their notice of appeal.[5] Federal Rule of Appellate Procedure 3(c)(1)(B) provides that "[t]he notice of appeal must . . . designate the judgment, order, or part thereof being appealed." "Rule 3's dictates are jurisdictional in nature," *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) (quoting *Smith v. Barry*, 502 U.S. 244, 248 (1992)), but "a mere technical error in designating the proper judgment being appealed will not divest us of jurisdiction," *Lockett v. Anderson*, 230 F.3d 695, 700 (5th Cir. 2000). We "construe a notice of appeal liberally to avoid technical barriers to review"; thus, "[a] mistake in designating orders to be appealed does not bar review [(1)] if the intent to appeal a particular judgment can be fairly inferred and [(2)] if the appellee is not prejudiced or misled by the mistake." *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998). When a party appeals only the denial of a motion for reconsideration under Rule 59(e), "we can infer that the party meant to appeal the adverse underlying judgment." *Lockett*, 230 F.3d at 700; *see also, e.g.*, *R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 808 (5th Cir. 2012) ("We have specifically treated appeals of 59(e) motions for reconsideration as appeals of the underlying judgment when the intent to do so was clear." (alterations omitted) (quoting *Alberta Energy Partners v. Blast Energy Servs., Inc.,* 593 F.3d 418, 424 n.3 (5th Cir. 2010))). "[I]n determining the fairly inferred scope of the appeal," we "consider not only the notice, but also the

---

[5] In its cursory treatment of this issue, Ditech asserts that we are not required to consider the underlying dismissal, but does not specifically assert that we lack jurisdiction over that order. Nonetheless, the Smithers interpret and brief Ditech's argument as a challenge to our jurisdiction.

appellant's brief." *Williams v. Henagan*, 595 F.3d 610, 616 (5th Cir. 2010) (per curiam).

Here, the Smithers' notice of appeal only designated the district court's May 27, 2016, order denying their Rule 59(e) motion. Nonetheless, we can infer from their appeal of the denial of the Rule 59(e) motion, together with the fact that the Smithers (and Ditech) fully briefed on appeal the issues raised by the underlying dismissal, that the Smithers clearly intended to also appeal this dismissal. *See, e.g.*, *R.P.*, 703 F.3d at 808; *Lockett*, 230 F.3d at 700. Because Ditech has not asserted it was prejudiced by the omission of the dismissal from the notice of appeal, we have jurisdiction to review the underlying dismissal order. *See, e.g.*, *Alberta Energy Partners*, 593 F.3d at 424 n.3; *Lockett*, 230 F.3d at 700.

## III.  STANDARD OF REVIEW

"We generally review a decision on a motion to alter or amend judgment under Rule 59(e) for abuse of discretion." *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Loc. 4–487*, 328 F.3d 818, 820 (5th Cir. 2003). However, the standard of review is de novo where the ruling seeks reconsideration of a question of law. *Id.* We likewise review a district court's grant of a motion to dismiss de novo, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Sullo & Bobbitt,* 765 F.3d at 391.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a

No. 16-20392

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.  FAILURE TO STATE A CLAIM

The Smithers contend that the district court erred in dismissing their case and denying their motion for reconsideration because they stated a plausible claim (1) for a declaration that Ditech's right to foreclosure was time-barred by Texas Civil Practice and Remedies Code § 13.605's four-year statute of limitations for foreclosure actions; (2) that Ditech violated the TDCA; and (3) that Ditech violated that FDCPA.  We begin our analysis with the Smithers' claim that Ditech is time-barred from foreclosing on its lien on the Property.

### A.  Claim for Declaratory Relief

Under Texas law, "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code § 16.035(a).  "On the expiration of the four-year limitations period, the real property lien . . . become[s] void."  *Id.* § 16.035(d).  Where, as here, the note secured by the real property lien is payable in installments, "the four-year limitations period does not begin to run until the maturity date of the last . . . installment."  *Id.* § 16.035(e).  However, if the note contains an option to accelerate payment upon default, "the action accrues . . . when the holder actually exercises its option to accelerate."  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

To effectively accelerate payment of a note, the noteholder must provide "(1) notice of intent to accelerate and (2) notice of acceleration."  *Id.*; *see also Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015).  The notice of intent to accelerate "must afford an opportunity to cure the default" and provide notice "that failure to cure will result in acceleration of the note and foreclosure."  *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982).

Once the requisite notice of intent is provided, notice of acceleration may take the form of the filing of a foreclosure action. *See Burney v. Citigroup Glob. Mkts. Realty Corp.*, 244 S.W.3d 900, 903–04 (Tex. App.—Dallas 2008, no pet.). Notice of acceleration "cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable." *Ogden*, 640 S.W.2d at 234. However, once the noteholder has accelerated payment of the note, the holder may abandon that acceleration, which "'has the effect of restoring the contract to its original condition,' [and] thereby 'restoring the note's original maturity date' for purposes of accrual." *Boren*, 807 F.3d at 104 (quoting *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)); *see also Holy Cross Church of God in Christ*, 44 S.W.3d at 566–67.

In determining whether a noteholder has abandoned acceleration, Texas courts have referenced traditional principles of waiver. *Boren*, 807 F.3d at 105. "Under Texas law, the elements of waiver include: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015)). One way in which Texas courts have recognized that a noteholder may evince its intent to waive a prior acceleration is by voluntarily nonsuiting an action to collect on the note or to foreclose on the lien securing the note. *See Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ) ("[T]he City had a right to withdraw or revoke its option to accelerate payment, and effectively expressed its intent to do so by taking a non-suit."); *see also, e.g., Costello v. U.S. Bank Tr., N.A.*, No. H-16-702, 2016 WL 5871459, at *4 (S.D. Tex. Oct. 7, 2016) ("Acceleration can be abandoned by . . . a creditor's voluntary dismissal of its claims against a debtor."), *appeal docketed*, No. 16-20739; *Wells Fargo Bank v. Mata*, No. A-14-CA-00909-SS, 2016 WL 7616627, at *4 (W.D. Tex. Oct. 12, 2016) ("[T]he first

acceleration of Defendants' debt . . . was abandoned . . . when Plaintiff filed its motion for nonsuit in the First Foreclosure Action."); *Bitterroot Holdings, LLC v. MTGLQ Inv'rs, L.P.*, No. 5:14-CV-862, 2015 WL 363196, at \*6 (W.D. Tex. Jan. 27, 2015) ("[T]he prior Notices of Acceleration issued by [the lender] . . . were abandoned when [the lender] dismissed its claims without prejudice in state court."), *aff'd*, 648 F. App'x 414 (5th Cir. 2016) (per curiam).

In both their original petition and amended complaint, the Smithers alleged that Bank of America voluntarily dismissed the 2009 Foreclosure Suit. They concede that, at the motion to dismiss stage, we must accept this fact as true, but argue that the facts alleged nonetheless do not support the reasonable inference that Bank of America waived the 2009 Acceleration because there is "nothing in the [pleadings] to indicate that [Ditech] sent a second set of acceleration notices to the[m]."[6]  In support, the Smithers point to *Callan v. Deutsche Bank Tr. Co. Ams. (Callan I)*, 11 F. Supp. 3d 761 (S.D. Tex. 2014). There, the district court held that Deutsche Bank had not abandoned acceleration of a note when it dismissed a 2008 foreclosure action because Deutsche Bank "relied on the same November 6, 2007 notice of acceleration in filing its second foreclosure proceeding in February 2009."  *Id.* at 769. According to the district court, Deutsche Bank's reliance on the prior notice of acceleration "ma[d]e clear that Deutsche did not abandon the acceleration by dismissing the 2008 action." *Id.*  The district court further held that Deutsche Bank's subsequent rescission of the November 6, 2007 notice of acceleration

---

[6] The Smithers also argue that Bank of America and Ditech made statements inconsistent with abandonment of the 2009 Acceleration—namely, that Bank of America and Ditech reported to credit agencies "that the Property was in the process of foreclosure or in foreclosure" following the voluntary dismissal of the 2009 Foreclosure Suit.  According to the Smithers' own argument, however, these statements would be consistent with abandonment if Bank of America and Ditech did, in fact, provide separate acceleration notices.  Thus, the Smithers' argument about the statements is, at base, the same as their argument about Ditech's failure to provide a second set of acceleration notices.

was ineffective due to the borrower's detrimental reliance on the acceleration and, therefore, concluded that Deutsche Bank's third foreclosure action, filed in 2012, was time-barred. *Id.* at 772.

The Smithers' "reliance on . . . *Callan* [*I*] is misplaced." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 680 (5th Cir. 2015) (per curiam). "[T]he district court [in *Callan*] later amended its judgment and held that, contrary to its earlier opinion, 'Deutsche was entitled to rescind, and its [foreclosure application] . . . was not time-barred.'" *Id.* (omission and third alteration in original) (quoting *Callan v. Deutsche Bank Tr. Co. Ams. (Callan II)*, 93 F. Supp. 3d 725, 737 (S.D. Tex. 2015)). Significantly, the district court's opinion in *Callan II* omitted the holding in *Callan I* that Deutsche Bank did not abandon acceleration of the note when it dismissed the 2008 foreclosure action—the holding upon which the Smithers almost entirely rest their case. *Callan II*, 93 F. Supp. 3d at 737–38.

But even if the Smithers' reliance on *Callan I* were not misplaced, the Smithers' position still must be rejected. The Smithers did not allege in either their original petition or their amended complaint that Ditech did not, in fact, provide them a second set of acceleration notices in connection with the 2015 Foreclosure Suit. Instead, they argue that the absence of an allegation as to separate acceleration notices supports the reasonable inference that no separate acceleration notices were provided and, therefore, that the 2009 Acceleration was not abandoned. We disagree. The original petition and amended complaint are devoid of any factual allegations that would support a reasonable inference that Ditech did not send separate acceleration notices,[7]

---

[7] In fact, Ditech has provided the court with separate acceleration notices that were apparently provided to the Smithers in connection the 2015 Foreclosure Suit and asked that we take judicial notice of them. Because the Smithers' claim fails regardless of whether we accept or reject Ditech's request to take judicial notice, we need not, and do not, address

much less support the inference that Bank of America did not abandon the 2009 Acceleration. Indeed, the credit reporting activity about which the Smithers also complain suggests that the 2009 Acceleration was, in fact, abandoned. For instance, in 2013, the Loan was reported as closed with a delinquency of $13,101—far less than the Loan's accelerated balance of $406,323.83.[8] Accordingly, the Smithers failed to state a plausible claim for declaratory relief.

## B. TDCA Claim

In their amended complaint, the Smithers asserted, in relevant part, that Ditech "misrepresented the character, extent, or amount of a consumer debt in violation of Tex. Fin. Code § 392.304(a)(8)" by not reflecting the abandonment of the 2009 Acceleration "on information provided to credit reporting agencies."[9] To state a claim under § 392.304(a)(8), a plaintiff must plausibly allege a misrepresentation led him or her to be unaware (1) that he or she had a mortgage debt, (2) of the specific amount owed, or (3) that he or she had defaulted. *See Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 832 (5th

---

whether it would be appropriate for us to take judicial notice of the separate acceleration notices.

[8] Contrary to the Smithers' position, the reports by Bank of America and Ditech "that the Property was in the process of foreclosure or in foreclosure" following the voluntary dismissal of the 2009 Foreclosure Suit do not support the inference that Bank of America did not abandon the 2009 Acceleration. As an initial matter, the Smithers' position assumes that Bank of America and Ditech could not subsequently foreclose on the Property to recover on only the unaccelerated, delinquent balance of the Loan. The Smithers, however, have cited absolutely no factual or legal basis for that assumption. Moreover, even if re-acceleration were a prerequisite to a subsequent foreclosure, as the Smithers assume, the pleadings are devoid of any factual allegation that would support the inference that Bank of America and Ditech did not provide, or would not have provided, separate notices of acceleration, which the Smithers concede would confirm abandonment.

[9] The Smithers concede that the other TDCA claim asserted in their original petition and amended complaint—that Ditech violated the TDCA by continuing to report on the Smithers' credit reports past-due amounts on the Loan, even though that debt was no longer enforceable—fails in light of our holding that they have not stated a claim for declaratory relief. Accordingly, we do not separately address that claim.

Cir. 2015); *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013); *see also Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014) (per curiam).  The Smithers' amended complaint fails to make any such allegation.  Accordingly, the Smithers failed to state a plausible claim that Ditech violated the TDCA.

## C.  FDCPA Claim

The Smithers asserted in their amended complaint that Ditech violated the FDCPA "[b]y continuing to report the past-due amounts on the Loan and the foreclosure of the Loan on the [Smithers'] credit reports even though either the debt is no longer enforceable or the foreclosure was abandoned."  The FDCPA prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  A claim under the FDCPA must be brought within one year from the date the violation occurs.  15 U.S.C. § 1692k(d).  Here, the only credit reporting activity that is alleged to have occurred within the one-year limitations period is a report by Greentree Financial Services that foreclosure proceedings were initiated in 2015.  The Smithers have failed to show how Greentree Financial Services is related to Ditech or how that specific report was false, deceptive, or otherwise misleading.  Moreover, the Smithers have failed to raise any basis for tolling limitations as to any other alleged misrepresentation.  Accordingly, the Smithers failed to state a plausible claim that Ditech violated the FDCPA.

## V.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.