**Affirmed in part; Reversed and Remanded in part and Opinion Filed April 20, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00881-CV**

**OHIO GRAVY BISCUIT, INC. AS TRUSTEE FOR THE WOODHAVEN DRIVE 1401 LAND TRUST, Appellant**
**V.**
**NRZ PASS-THROUGH TRUST X, US BANK NATIONAL ASSOCIATION AS TRUSTEE, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-04848-2019**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Myers

This is an appeal from a summary judgment granted in favor of appellee NRZ Pass-Through Trust X, U.S. Bank, National Association as Trustee. Appellant Ohio Gravy Biscuit, Inc., as trustee for the Woodhaven Drive 1401 Land Trust, argues the trial court erred in granting summary judgment. We affirm in part and reverse and remand in part.

### BACKGROUND AND PROCEDURAL HISTORY

On December 9, 2002, Daniel Budd and Diana Budd (the Budds) acquired an interest in property at 1401 Woodhaven Drive, McKinney, Texas 75070 (the

property) via a "Warranty Deed with Vendor's Lien." On April 4, 2007, they executed a "Texas Home Equity Note" (the note) in favor of Countrywide Home Loans, Inc., in the original principal sum of $400,000, and they executed a "Texas Home Equity Security Instrument" encumbering the property (the deed of trust) as security for payment of the note (collectively, the loan agreement). The deed of trust was recorded in the Collin County public records on April 11, 2007.

Appellee "NRZ Pass-Through Trust X, U.S. Bank Nation Association as Trustee" is the beneficiary of the deed of trust pursuant to a chain of assignments. On September 20, 2012, Countrywide, through its nominee Mortgage Electronic Registration Systems, Inc. (MERS), assigned the deed of trust to Bank of America, N.A., successor by merger with "BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP." The assignment was recorded in the Collin County public records four days later, on September 24, 2012. On May 3, 2016, Bank of America assigned the deed of trust to "Citibank, N.A., Not in its Individual Capacity, but solely as Trustee of NRZ Pass-Through Trust, VI" (Citibank). This assignment was recorded in the Collin County public records on May 12, 2016. On April 6, 2018, Citibank assigned the deed of trust to NRZ, and this assignment was recorded in the Collin County public records on April 23, 2018.

The property was also subject to a homeowner's association (HOA) declaration of covenants, conditions, and restrictions—more precisely, the "Second Amended and Restated Master Declaration of Covenants, Conditions and

–2–

Restrictions for Stonebridge Ranch" (the HOA declaration). The declaration created an assessment lien securing the Budds' obligation to pay their HOA dues to the association.

It is undisputed that the Budds failed to make their contractually scheduled monthly payments. NRZ, or its predecessors, began foreclosure proceedings on the property on December 30, 2013, when Bank of America filed the first rule 736 application for foreclosure under cause 429-05154-2013.[1] A second rule 736 application was filed by Bank of America on June 15, 2015, under cause 219-02390-2015. Both applications included a notice of default to the Budds dated December 13, 2012, informing them the loan was "in serious default" because the required monthly payments had not been made. On June 16, 2014, however, the previous accelerations were rescinded by Bank of America, and yet another rescission of acceleration was tendered by NRZ on May 3, 2019.

The Budds also failed to pay their dues to the HOA, and it foreclosed on its lien on January 5, 2016. Woodhaven Drive 1401 Land Trust (Woodhaven) purchased the property at the HOA foreclosure sale for $12,000. On January 12, 2016, a substitute trustee's deed was recorded in the Collin County public records.

---

[1] Section 21 of the deed of trust authorized the lender to accelerate the debt in the event of default and to "invoke the power of sale" if the default was not cured. Section 22 provided the terms governing a foreclosure sale of the property by the trustee. Under section 22, "Borrower authorize[d] Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines," and required the trustee to deliver a trustee's deed to the purchaser of the Property.

On June 14, 2016, NRZ's predecessor in interest, Bank of America, N.A. (Bank of America), filed suit against Woodhaven in a Collin County district court (cause 416-02540-2016) seeking to quiet title to the property and for a declaratory judgment to establish that its deed of trust was valid; that it was superior to the HOA assessment lien; and that Bank of America held clear title to the property (the 2016 lawsuit). In 2017, Citibank substituted in as plaintiff for Bank of America.

On September 8, 2017, the trial court granted summary judgment, including declaratory relief, in Citibank's favor. Woodhaven appealed the summary judgment, and on December 19, 2018, we affirmed the trial court's judgment. *See Woodhaven Dr. 1401 Land Trust v. Citibank, N.A.*, No. 05-17-01393-CV, 2018 WL 6629586 (Tex. App.—Dallas Dec. 19, 2018, no pet.) (mem. op.) (affirming trial court's summary judgment and declaratory judgment in favor of Citibank).

On March 11, 2019, NRZ filed a notice of substitute trustee's sale, and the property was scheduled for an April 2, 2019, foreclosure sale. However, on March 21, 2019, appellant Ohio Gravy Biscuit, Inc. (OGB), as trustee for the Woodhaven Drive 1401 Land Trust, filed suit against NRZ in a Collin County district court seeking to stop the foreclosure, alleging suit to quiet title (the March 2019 suit). The petition alleged that more than four years had passed since the acceleration of the note and that the deed of trust had terminated. The foreclosure sale was cancelled, and foreclosure delayed, because of a temporary restraining order (TRO) obtained by OGB and signed by the trial court on March 27, 2019. The TRO indicates its

–4–

basis was that the exercise of the powers of sale under the deed of trust had terminated, based on the (alleged) expiration of the statute of limitations.

New notices of default were mailed to the Budds on June 19, 2019. They failed to cure the default, and as of May 14, 2020, the loan agreement payoff was approximately $703,779.31, which continues to accrue interest at a per diem rate of $65.04.[2] NRZ has been paying property taxes on the property and has been paying and maintaining insurance for the property.

On August 28, 2019, NRZ filed the instant original petition against the Budds and OGB in the 401st district court of Collin County seeking (among other relief) a home equity judicial foreclosure and asserting claims against OGB for tortious interference with contract, quantum meruit, and money had and received. OGB filed its answer and request for disclosure on September 30, 2019. On June 11, 2020, NRZ filed a combined motion for summary judgment as to OGB and motion for default judgment as to the Budds. On June 29, OGB filed a counter-petition asserting a quiet title claim. OGB filed its summary judgment response on July 6, 2020. NRZ filed a reply to the response three days later, on July 9, and the trial court signed the final judgment granting default and summary judgment for NRZ on July 10. In addition to authorizing judicial foreclosure of the property, the judgment orders OGB to pay NRZ $21,139.06 for damages NRZ sustained because of the

---

[2] *See* TEX. PROP. CODE § 12.017(a)(5) (defining "Payoff statement" to include the unpaid balance of a loan secured by a mortgage and per diem interest for the unpaid balance).

trust's actions. On July 31, 2020, OGB filed a motion for new trial, which was overruled by operation of law, and on October 8, 2020, it filed the instant notice of appeal.

## DISCUSSION

### Summary Judgment Standard of Review

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

### Appellant's Issues

OGB argues the trial court erred in granting NRZ's motion for summary judgment because the summary judgment record contained genuine issues of material fact. More specifically, OGB argues (1) the summary judgment record did not contain competent evidence to establish a prima facie case for tortious interference with contract; (2) a prima facie case for quantum meruit or unjust enrichment; (3) the record contains evidence establishing that NRZ's lien was void

–6–

ab initio; and (4) the trial court erred in allowing a judicial foreclosure because NRZ failed to establish any entitlement to judicial foreclosure.

## Quantum Meruit

We begin with OGB's second issue, which argues the trial court erred in awarding judgment for NRZ because the summary judgment record does not contain competent evidence establishing a prima facie case for quantum meruit or unjust enrichment.[3]

"Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Generally, a party may recover under quantum meruit only if no express contract covering the services or materials furnished exists. *Id.*; *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). Quantum meruit "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978). A party can recover in quantum meruit when non-payment for the services rendered would result in an unjust enrichment to the party benefited by the work. *Vortt Expl. Co.*, 787 S.W.2d at 944.

Recognizing that quantum meruit is founded on unjust enrichment, the essential elements of a quantum meruit claim are: (1) valuable services were

---

[3] During oral argument, counsel for NRZ abandoned the claims for tortious interference and money had and received, so we do not discuss OGB's first issue, which concerns the tortious interference claim.

–7–

rendered or materials furnished; (2) for the person sought to be charged; (2) which services and materials were accepted by the person sought to be charged, used and enjoyed by him or her; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Expl. Co.*, 787 S.W.2d at 944 (citing *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)); *see also In Matter of Marriage of S.C.*, No. 05-14-00661-CV, 2015 WL 4524191, at *7 n.7 (Tex. App.—Dallas July 27, 2015, no pet.) (mem. op.); *Speck v. First Evangelical Lutheran Church of Houston*, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.). To recover in quantum meruit, the plaintiff must show it rendered valuable services or furnished materials *for* the defendant; it is not enough to show the plaintiff rendered valuable services or furnished materials that benefited the defendant. *Truly*, 744 S.W.2d at 944; *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 455 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see Metroplexcore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014) (discussing *Vortt*).

OGB attacks the fourth element of NRZ's quantum meruit claim, arguing there is no summary judgment evidence it had any expectation it would be paid by OGB. OGB cites *Balfour Beatty Rail, Inc. v. Kansas City Southern Railway Co.*, 173 F. Supp. 3d 363 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018), where the court explained the fourth element of a

quantum meruit claim as follows:

> To satisfy this last requirement, the claimant must show that, *before* it provided services or furnished materials, it notified the person or entity sought to be charged that it anticipated payment for such services or materials or the person or entity sought to be charged had notice *beforehand* that the claimant anticipated payment for the services or materials being provided.

*Id*. at 403. NRZ tries to distinguish *Balfour* by arguing the above passage— which it claims was "cherry picked" out of the opinion—relates to "services or materials" furnished as part of a construction contract. *See id*. Additionally, argues NRZ, it provided a service or material to OGB by paying ad valorem taxes and hazard insurance on the property that benefitted OGB "while it continued its unfettered collection of rental income" on the property.

However, other cases besides *Balfour* have explained that in order to recover under quantum meruit, the services rendered by a party must be accepted and used by another under circumstances which would reasonably notify the recipient that the performing party expected the recipient to pay him or her for the work; the basis for a claim in quantum meruit is either an express or implied agreement to pay for the work. *See, e.g., Pearl Res. LLC v. Charger Servs., LLC*, 622 S.W.3d 106, 121–22 (Tex. App.—El Paso 2020, pet. denied); *BP Automotive LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 207 (Tex. App.—Texarkana 2017, no pet.); *Gen. Capital Group Beteligungsberatung GMBH v. AT & T*, 407 S.W.3d 507, 512 (Tex. App.—Dallas 2013, pet. denied); *Walker & Assoc. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 858 (Tex. App.—Texarkana 2010, no pet.); *Residential Dynamics, LLC*

*v. Loveless*, 186 S.W.3d 192, 199 (Tex. App.—Fort Worth 2006, no pet.); *Gen. Homes, Inc. v. Denison*, 625 S.W.2d 794, 796 (Tex. App.—Houston [14th Dist.] 1981, no writ); *see also Truly*, 787 S.W.2d at 944.

The summary judgment evidence does not support the notice element. This element focuses on what the recipient of the services knew or should have known before or at the time the services were accepted. *Balfour*, 173 F.Supp.3d at 403; *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 & n.4 (Tex. 1992); *Ellis v. Reliant Energy Retail Servs., L.L.C.*, 418 S.W.3d 235, 255 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). An essential element of any claim for recovery in quantum meruit is, of course, that the plaintiff must expect to be compensated for the services rendered. *Vortt Expl. Co.*, 787 S.W.2d at 944; *Pearl Res. LLC,* 622 S.W.3d at 121–22; *Gen. Capital Group*, 407 S.W.3d at 512–13. But the defendant must have the same expectation. *Vortt Expl. Co.*, 787 S.W.2d at 944; *General Capital Grp.*, 407 S.W.3d at 512.

NRZ does not direct us to—and we have not found—any summary judgment evidence showing OGB accepted NRZ's payment of the ad valorem taxes and insurance on the property under such circumstances as reasonably notified OGB that NRZ expected to be paid for the services rendered. Nor are we persuaded by NRZ's citation of paragraph 9 of the deed of trust (titled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument"), which, as NRZ explains,

–10–

entitled it to pay the taxes and insurance on the property to protect its interest, because, again, there is no evidence OGB had notice NRZ anticipated repayment.

NRZ has thus not met its burden of showing there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law on its quantum meruit claim. *See, e.g., Heldenfels Bros*., 832 S.W.2d at 41 & n.4; *Vortt Expl. Co*., 787 S.W.2d at 944–45; *Ellis*, 418 S.W.3d at 254; *Gen. Capital Group* , 407 S.W.3d at 512–13; *Myrex Indus*., 126 S.W.3d at 551. Therefore, we sustain OGB's second issue and conclude the trial court erred in granting summary judgment in favor of NRZ on its quantum meruit claim.[4]

### Quiet Title Counterclaim

In its third issue, OGB contends the trial court erred in awarding summary judgment for NRZ because the record contained evidence the lien was void ab initio pursuant to the Texas Constitution. OGB's argument is based on its suit to quiet title counterclaim and article XVI, section 50 of the Texas Constitution, which provides that a home equity loan may not exceed 80 percent of the fair market value of the home. *See* TEX. CONST. art. XVI, § 50(a)(6)(B). OGB argues the advance of $400,000 was more than the appraised value of the property, and that the trial court therefore erred in awarding a foreclosure judgment because the evidence established

---

[4] In a reply brief, OGB raises the argument that allowing NRZ to recover under a theory of quantum meruit or unjust enrichment and, at the same time, pursue judicial foreclosure amounts to a "double recovery," which is prohibited. NRZ sur-replies that this argument was not raised in the trial court and that it is, thus, waived. Because of our conclusion above that the court erred in granting summary judgment for NRZ on its quantum meruit claim, we do not address this argument.

the lien was invalid in that it violated the 80 percent rule in article XVI, section 50.

NRZ responds that OGB's suit to quiet title counterclaim fails as a matter of law because (1) it is barred by res judicata and/or issue preclusion, which was tried by consent; and (2) OGB failed to prove the lien was invalid. We focus on NRZ's first argument.

"Res judicata is a generic term for the related concepts of claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Barnes v. United Parcel Serv., Inc.*, 395 S.W.3d 165, 173 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Collateral estoppel, or issue preclusion, precludes relitigation of issues resolved in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *New Talk, Inc. v. Sw. Bell Tel. Co.*, 520 S.W.3d 637, 645 (Tex. App.—Fort Worth 2017, no pet.). Res judicata, or claim preclusion, bars relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and could have been litigated in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *New Talk, Inc.*, 520 S.W.3d at 645.

Res judicata and collateral estoppel are affirmative defenses that must be pleaded unless tried by consent. *See* TEX. R. CIV. P. 94; *In re I.M.*, No. 06-21-00002-CV, 2021 WL 1991271, at *13 (Tex. App.—Texarkana May 19, 2021, pet. denied) (mem. op.); *In re D.L.W.*, No. 07-15-00243-CV, 2015 WL 8225213, at *4 n.9 (Tex. App.—Amarillo Dec. 4, 2015, no pet.) (mem. op.); *In re R.J.P.*, 179 S.W.3d 181, 183 n.1 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (plurality op.). Unpleaded

claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991). Trial by consent may be appropriate in some summary judgment situations. *Id.*; *see Basic Capital Mgmt. v. Dynex Comm., Inc.*, 348 S.W.3d 894, 899 (Tex. 2011); *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).

For res judicata to apply, the following elements must be present: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Hill v. Tx–An Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 424 (Tex. App.—Dallas 2014, no pet.). The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr*, 837 S.W.2d at 629.

Neither res judicata nor collateral estoppel were pleaded. But the record shows that, in its August 2019 original petition, NRZ asserted that OGB's quiet title claim from the March 2019 suit was "the exact claim" adjudicated in the 2016 suit between Citibank and Woodhaven. NRZ's petition and summary judgment motion included as an exhibit our prior opinion from the 2016 case, where we stated in part that "the summary judgment evidence conclusively established Citibank's lien *was*

*valid and superior to Woodhaven's lien*." *Woodhaven*, 2018 WL 6629586, at \*4 (emphasis added). In its counter-petition filed on June 29, 2020, eighteen days after NRZ's summary judgment motion, OGB asserted a quiet title claim that the deed of trust was void ab initio based on the loan allegedly violating article XVI, section 50. Six days later, on July 6, OGB filed its response to NRZ's summary judgment, arguing again the lien was void ab initio based on article XVI, section 50. In its summary judgment reply filed three days after that, at 1:43 p.m. on July 9, the day before the court signed the final judgment, NRZ asserted that, to the extent OGB was stating a new argument that the lien was invalid "based on some type of constitutional challenge," OGB was barred from doing so by res judicata or issue preclusion. The court's final judgment states that it considered the summary judgment motion along with the pleadings, legal arguments, affidavits on file with the court, and all other pertinent evidence.

Given the record here, we conclude the issue of res judicata was tried by consent, and that the summary judgment record establishes res judicata. First, the previous judgment was rendered by a court of competent jurisdiction. Second, it is undisputed that the parties here are in privity with those in the previous case. Third, OGB's quiet title counterclaim against NRZ arises out of the same transaction that was the subject of the 2016 suit, where the deed of trust's validity was at issue, and it could have been brought in the previous suit. *See Woodhaven*, 2018 WL 6629586, at \*1 ("BOA filed suit against Woodhaven on June 14, 2016, seeking to quiet title

–14–

to the Property and for declaratory judgment that its First Lien Deed of Trust was valid, the First Lien Deed of Trust was superior to the assessment lien, and BOA held clear title to the Property."). OGB argues the prior case dealt only with lien priority, but the parties in that case litigated the validity of the deed of trust and we held that Citibank's lien was valid and superior to Woodhaven's. *See id*. at *4.

Accordingly, OGB's suit to quiet title counterclaim is barred by res judicata. We overrule OGB's third issue.

### Judicial Foreclosure

In its fourth issue, OGB argues the trial court erred in allowing judicial foreclosure because NRZ failed to establish its entitlement to a judicial foreclosure. More precisely, OGB contends NRZ did not establish all the elements of a judicial foreclosure.

"'To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) plaintiffs are in default under the note and security instrument; and (4) plaintiffs received notice of default and acceleration.'" *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *5 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.) (quoting *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 Fed. Appx. 306 (5th Cir. 2014)).

OGB focuses on the fourth element, arguing NRZ did not establish its

entitlement to summary judgment on judicial foreclosure because it failed to show it accelerated the note before filing suit. The record, however, includes the prior notices of acceleration that were rescinded in 2014, when the lender's attorney sent a notice of rescission, and, later, the notice of default to the borrowers dated June 19, 2019. OGB does not dispute that notice of default was mailed in June 2019, which provided an opportunity to cure the default.

Moreover, NRZ's petition included the following acceleration language in paragraph 13—bolded and underlined: "**Payment of the past due balance on the debt has not been received by Plaintiff. Because of this default, Plaintiff has elected to ACCELERATE the maturity of the debt**." The filing of suit itself may constitute notice of acceleration. *Joy Corp. v. Nob Hill N. Props., Ltd.*, 543 S.W.2d 691, 694 (Tex. Civ. App.—Tyler 1976, no writ) (stating that to accelerate, a lienholder must make a formal demand for the payment of the past due amount, give an opportunity to make the payment, and "[d]eclare that the entire debt is due, or take some unequivocal action, such as filing suit, which indicates that the entire debt is due"); *Emmert v. Wilmington Sav. Fund Soc'y, FSB*, No. 02-17-00119-CV, 2018 WL 1005002, at *4 (Tex. App.—Fort Worth Feb. 22, 2018, no pet.) (mem. op.) (declining to address whether lender may unilaterally waive acceleration over objection of debtor "because the filing of suit itself may constitute notice of acceleration"); *see Florey v. U.S. Bank Nat'l Ass'n, Tr. for RMAC Tr., Series 2016-CCT*, No. 05-20-00306-CV, 2021 WL 2525457, at *5 (Tex. App.—Dallas June 21,

2021, pet. denied) (mem. op.) ("The applications for expedited foreclosure by themselves constituted notices of acceleration."); *Burney v. Citigroup Glob. Markets Realty Corp.*, 244 S.W.3d 900, 904 (Tex. App.—Dallas 2008, no pet.) ("[N]otice of filing an expedited application for foreclosure after the requisite notice of intent to accelerate is sufficient to constitute notice of acceleration."); *see also Smither v. Ditech Fin., L.L.C.*, 681 Fed. Appx. 347, 352 (5th Cir. 2017) (citing *Burney*, 244 S.W.3d at 903–04).

Therefore, the trial court did not err in granting summary judgment for NRZ on its claim for judicial foreclosure. We overrule OGB's fourth issue.

### CONCLUSION

We sustain OGB's first and second issues. The trial court's July 10, 2020 final judgment is affirmed in part and reversed and remanded in part. The portion of the judgment ordering OGB to pay NRZ $21,139.06 in damages based on NRZ's claims against OGB for tortious interference, quantum meruit, and money had and received is reversed, and the case remanded for further proceedings. The remainder of the judgment is affirmed.


200881f.p05

/Lana Myers//
LANA MYERS
JUSTICE

–17–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

OHIO GRAVY BISCUIT, INC. AS
TRUSTEE FOR THE
WOODHAVEN DRIVE 1401
LAND TRUST, Appellant

No. 05-20-00881-CV     V.

NRZ PASS-THROUGH TRUST X,
US BANK NATIONAL
ASSOCIATION AS TRUSTEE,
Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-04848-
2019.
Opinion delivered by Justice Myers.
Justices Molberg and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** and **REMANDED** in part. We **REVERSE** that portion of the trial court's judgment ordering appellant OHIO GRAVY BISCUIT, INC., AS TRUSTEE FOR THE WOODHAVEN DRIVE 1401 LAND TRUST, to pay appellee NRZ PASS-THROUGH TRUST X, US BANK NATIONAL ASSOCIATION AS TRUSTEE, $21,139.06 in damages. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion. It is **ORDERED** that each party bear its own costs of this appeal.

–18–

Judgment entered this 20th day of April, 2022.